UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                  v.                                       5:08-CR-61
                                                            (FJS)

JAMES M. KERNAN, ROBERT J. ANDERSON,
and MARLENE M. KERNAN,

                             **Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY**<br>James Hanley Federal Building<br>& United States Courthouse<br>100 South Clinton Street<br>P.O. Box 7198<br>Syracuse, New York 13261-7198<br>Attorneys for the United States | EDWARD R. BROTON, AUSA |
| **KATTEN MUCHIN ROSENMAN LLP**<br>575 Madison Avenue<br>New York, New York 10022<br>Attorneys for Defendant James Kernan | SCOTT A. RESNIK, ESQ. |
| **OFFICE OF EMIL M. ROSSI**<br>307 South Townsend Street, Suite 100<br>Syracuse, New York 13202<br>Attorneys for Defendant James Kernan | EMIL M. ROSSI, ESQ. |
| **OFFICE OF MICHAEL J. VAVONESE**<br>407 South Warren Street, Suite 300<br>Syracuse, New York 13202<br>Attorneys for Defendant James Kernan | MICHAEL J. VAVONESE, ESQ. |
| **OFFICE OF RICHARD D. PRIEST**<br>333 East Onondaga Street<br>Syracuse, New York 13202<br>Attorneys for Defendant James Kernan | RICHARD D. PRIEST, ESQ. |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

In a fifteen count Superseding Indictment, the Government charges Defendant James Kernan with (1) one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 (Count 1); (2) five counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 2 through 6); (3) five counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 7 through 11); (4) three counts of insurance fraud in violation of 18 U.S.C. § 1033 (Counts 12, 14 and 15); and (5) forfeiture allegations related to Counts 1 through 11. *See, generally*, Superseding Indictment.[1]

Defendant James Kernan moved to dismiss Counts 1 through 12 of the Superseding Indictment, and the Government cross-moved for discovery pursuant to Rule 16(b)(1) of the Federal Rules of Civil Procedure.[2] On February 3, 2009, the Court heard oral argument in support of, and in opposition to, these motions. Ruling from the bench, the Court denied Defendant James Kernan's motion insofar as it relied on his contention that Count 1 failed to plead the time period of the conspiracy properly; denied the motion insofar as it relied on his assertion that 18 U.S.C. § 1033(e)(1)(B) was unconstitutionally vague as applied to him; and

---

[1] In the Superseding Indictment, the Government also charges Defendant Marlene Kernan with one count of insurance fraud in violation of 18 U.S.C. § 1033 (Count 13).

[2] Defendant Marlene Kernan joined in Defendant James Kernan's motion to dismiss the Superseding Indictment. At oral argument, the Court advised Defendant Marlene Kernan's counsel that, if he wanted the Court to consider his arguments, he had to file a formal motion to dismiss on behalf of his client. Counsel did so, and the Court has addressed that motion in a separate Memorandum-Decision and Order.

reserved decision insofar as it relied on his contention that Counts 1 through 11 failed to allege a scheme to defraud the "victim PEOs" and failed to allege any contemplated or intended harm against those victim PEOs.  Finally, the Court denied, without prejudice to renew, the Government's cross-motion for discovery.

The following constitutes the Court's written decision with regard to that part of Defendant James Kernan's motion on which the Court reserved decision.

## II. BACKGROUND

Defendant James Kernan is a licensed attorney and the owner and President of Oriska Insurance Company ("Oriska"), located in Oriskany, New York.  His wife, Defendant Marlene Kernan, is the President of Monument Agency, Inc. ("Monument"), which serves as an agency on behalf of Oriska.

The Superseding Indictment charges that Defendant James Kernan and Defendant Robert J. "Skip" Anderson, a three-time convicted felon, engaged in a scheme to defraud several professional employer organizations ("PEOs").[3]  Defendant Anderson, in related charges,  pled guilty to conspiracy to commiting the mail and wire fraud in violation of 18 U.S.C. § 371 and also to being a convicted felon engaged in the business of insurance in violation of 18 U.S.C. § 1033(e)(1)(A).

---

[3] PEOs provide outsourcing of various employer obligations such as payroll, withholding and payment of Social Security and other taxes, and the acquisition and management of various forms of insurance.  Often PEOs hire the employees of their client companies or businesses and lease the employees back to the client companies, thereby becoming an employer of record.  A critical service that PEOs perform for their client companies is providing valid workers compensation insurance.

The gist of the scheme to the defraud charge is that Defendant James Kernan and Defendant Anderson falsely represented to the PEOs that Oriska was approved and authorized to write the workers compensation insurance that Oriska was marketing. The scheme varied depending on which state the victim PEO and its employees did business.

Oriska was licensed as a workers compensation insurance carrier in New York State during the time period charged in the Superseding Indictment. However, it was not authorized or approved to issue workers compensation insurance policies with a $250,000 deductible ("high deductible") until February 15, 2003. Oriska first filed for permission to issue high deductible workers compensation policies with the New York Insurance Department on November 20, 2002. The Government alleges that despite this lack of authority, Defendant James Kernan and Defendant Anderson falsely represented to New York-based PEOs prior to February 15, 2003 that Oriska had the lawful authority to issue high deductible workers compensation insurance policies. The Government further alleges that through such misrepresentations, Oriska generated millions of dollars in revenue from sales of unapproved, unauthorized and unregulated policies thereby putting at risk thousands of employees of New York-based PEOs.

Defendant James Kernan and Defendant Anderson also marketed workers compensation insurance to PEOs whose employees were located in other states, including Pennsylvania, Arizona, California, New Jersey and Maine. The Government alleges that during this time, Oriska was not licensed, authorized or approved to write workers compensation insurance of any kind in those states and that by falsely representing that Oriska could validly issue insurance in those states, Defendant James Kernan collected millions of dollars in revenue.

Finally, the government alleges that Defendant James Kernan introduced Anderson to the

employees at Oriska as Director of Operations knowing of Anderson's felony convictions; that Defendant Anderson worked for both Oriska and Monument, reporting to both Defendant James Kernan and Defendant Marlene Kernan; and that Anderson was well compensated for his service[4].

### III. DISCUSSION

The Superseding Indictment contains multiple counts of mail fraud (Counts 2 through 6) and wire fraud (Counts 7 through 11).  By way of example, Count 2 charges as follows:

> From on or about December 2001, up to and including the date of this Indictment, the defendant
>
> **JAMES M. KERNAN**
>
> devised and intended to devise a scheme and artifice to defraud and to obtain money and property from the victim PEOs by means of false and fraudulent pretenses, representations, and promises.
>
> It was part of the scheme that the defendant James M. Kernan fraudulently induced the victim PEOs to purchase unlawful and invalid workers compensation insurance policies issued by Oriska, purportedly to provide coverage for the PEOs and their clients.
>
> It was further part of the scheme that the defendant falsely and fraudulently represented to the victim PEOs that Oriska could provide workers compensation insurance policies with a $250,000 deductible to cover the victim PEOs' clients, when as the defendant James M. Kernan well knew, Oriska was not approved or authorized by the New York State Superintendent of Insurance to issue workers compensation policies with a $250,000 deductible.

---

[4] Much of the compensation to Defendant Anderson's wife, Theresa Heinrich, who provided no goods or services to either Oriska or Monument but rather served as a conduit to receive payments intended for her husband.

>It was further part of the scheme that, in an effort to conceal Oriska's lack of authorization to issue workers compensation policies with a $250,000 deductible, Oriska did not timely provide written policies to some PEOs.
>
>It was further part of the scheme that, to conceal Oriska's lack of authority to issue $250,000 deductible policies, Oriska provided some PEOs written workers compensation insurance policy forms purportedly providing for a $5,000 deductible while charging and collecting premium applicable to a $250,000 deductible policy.
>
>It was further part of the scheme that, in an effort to conceal Oriska's lack of authorization to issue $250,000 deductible policies, Oriska sent invoices to the victim PEOs that falsely stated that the Oriska workers compensation policies provided a $5,000 deductible.
>
>It was further part of the scheme that the defendant James M. Kernan falsely and fraudulently represented to the victim PEOs that Oriska could provide workers compensation insurance coverage for their clients who, at the time the policies were to be issued, were located or worked in states where Oriska was not licensed, authorized, or approved to write insurance.
>
>It was further part of the scheme that the defendant James M. Kernan instructed victim PEOs that were located outside of New York State to obtain a New York State address to be used by Oriska on written policies purportedly issued to those PEOs.

*See* Superseding Indictment at ¶¶ 15-22.

The Superseding Indictment then lists the dates of particular mailings that Defendant James Kernan caused to be sent through the mails in furtherance of the scheme to defraud.

"'[T]he essential elements of a mail [or wire] fraud violation are (1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [or wires] to further the scheme.'" *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (quotation omitted). "To show a scheme to defraud, the government must present proof that defendants possessed a

fraudulent intent." *United States v. Schwartz*, 924 F.2d 410, 420 (2d Cir. 1991) (citation omitted). Although the government does not need to show that the intended victim of the fraud was actually harmed, the government must "show defendants contemplated doing actual harm, that is, something more than merely deceiving the victim." *Id.* (citation omitted). Therefore, "the deceit practiced must be related to the contemplated harm, and that harm must be found to reside in the bargain sought to be struck." *Id.* (citation omitted).

As the Second Circuit explained in *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007), its

> cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid – which do not violate the mail or wire fraud statutes – and schemes that depend for their completion on a misrepresentation of an essential element of the bargain – which do violate the mail and wire fraud statutes.

*Id.* at 108.

In the present case, to determine whether the Superseding Indictment's mail and wire fraud counts are sufficient, the Court must determine on which side of this "fine line" Defendant James Kernan's misrepresentations fell; i.e., were these misrepresentations collateral to the bargain or were they an essential element of the bargain.

To determine on which side of this line Defendant James Kernan's statements lie, it is necessary to understand the nature of the bargains at issue in the above-cited cases. As the Second Circuit explained in *United States v. Novak*, 443 F.3d 150 (2d Cir. 2006),

> [a]n intent to harm a party to a transaction cannot be found where the evidence merely indicates that the services contracted for were dishonestly completed. That is the teaching of *Starr*. In *Schwartz*, *Frank*, and *Walker*, an intent to harm was found because the

> defendants' compliance with the law in carrying out their contractual obligations was a fundamental part of the bargain between the parties.

*Id.* at 159.

Defendant James Kernan relies on the Second Circuit's decisions in *Shellef*; *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970); and *United States v. Starr*, 816 F.2d 94 (2d Cir. 1987), to support his contention that his alleged misrepresentations did not constitute a scheme to defraud because the PEOs received exactly what they bargained for. Specifically, he argues that his alleged misrepresentations neither go to the quality or adequacy of the insurance policies sold nor are they otherwise an essential element of the bargains that Oriska entered into with the PEOs. To support this assertion, he relies on the fact that, under New York Insurance Law, "an insurer is not relieved of any obligations to an insured by virtue of selling either unlicensed plans or unauthorized insurance products." *See* Defendant James Kernan's Memorandum of Law at 17-18 (citations omitted). Based on this section of New York Insurance Law, he contends that

> each PEO held a valid and fully enforceable insurance plan with Oriska during the entirety of the time period covered by the indictment. . . . [Therefore, because] Oriska's licensing and product-authorization status impacted only its standing with relevant regulators, not its legal obligations to its customers[,] . . . the indictment . . . fails to allege any contemplated or intended harm against the PEOs.

*See id.* at 16-18.

To the contrary, the Government relies on the Second Circuit's decisions in *United States v. Frank*, 156 F.3d 332 (2d Cir. 1997); *United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991);

*United States v. Paccione*, 949 F.2d 183 (2d Cir. 1991); and *United States v. Walker*, 191 F.3d 326 (2d Cir. 1999), to support its position that Defendant James Kernan's misrepresentations were an essential element of the bargain and that the PEOs did not receive what they bargained for. Specifically, the Government asserts that Defendant James Kernan's false representations "were not collateral or designed merely to gain access to PEO managers who decided what insurance to buy. Rather, [they] went directly to the nature and quality of the product that [Defendant James] Kernan was selling." *See* Government's Memorandum of Law at 13. The Government explains further that Defendant James Kernan

> falsely represented to PEOs whose employees worked in California, Arizona and Pennsylvania that Oriska was properly approved and authorized to issue workers compensation in those states even when he knew it was not so authorized or licensed. In New York State where Oriska was licensed [Defendant James] Kernan still lied about the authority of Oriska to issue high deductible policies. By doing so, he not only saved Oriska the time, effort and expense involved in obtaining proper authority and licensing, but he also lulled the PEOs into believing that the policies they were buying had been scrutinized and approved by state regulators. By evading this regulatory apparatus, [Defendant James] Kernan deprived the PEOs of the protection inherent in insurance regulatory oversight.

*See id.* at 13-14.

Finally, the Government argues that the PEOs did not get what they paid for. "[T]he PEOs were led to believe that the policies they purchased were reviewed, authorized and conformed to government standards and regulations. In fact, the insurance product sold by [Defendant James] Kernan underwent no such scrutiny." *See id.* at 14-15.

In *Paccione*, the indictment charged that the defendants used the mails

> to defraud doctors, which [sic] generated medical and infectious waste materials of money and property by charging them the high rates required for lawful transfer, storage and disposal of such waste, while actually transferring, storing and disposing of the waste at far lower rates illegally, and by exposing the generators to potential civil and criminal penalties for illegal transfer, storage and disposal of such waste.

*Paccione*, 949 F.2d at 1196.

The court found, among other things, that "[t]he mailing of communications that are designed to lull the victims of the fraud into believing they have received the services they bought is sufficient to support a conviction under § 1341." *Id.* (citation omitted). Finally, the *Paccione C*ourt concluded that the defendants' reliance on *Regent Office Supply* and *Starr* was misplaced because in *Paccione* there was

> no question that [the defendants'] customers did not get what they paid for. [Their] customers were led to believe they were purchasing careful, competent, and licensed services, together with a reduction of the risk of civil and criminal penalties for improper disposal. Instead [the defendants] frequently and flagrantly violated numerous SDEC regulations; [their] customers were exposed to substantial regulatory risks, and even had those risks not come to fruition, the fraud was complete.

*Id.*

Similarly, in *Frank*, the transaction involved a contract between a sewage transport company and various municipalities for the removal of raw sewage and its subsequent disposal at sea. Federal regulations required that the raw sewage be disposed of 106 miles from the shore, a significant increase from the previous distance of twelve miles. The contract called for the defendants to charge the municipalities based on the operating costs incurred for moving the sewage the full distance. *See Frank*, 156 F.3d at 335. The contracting company, however,

continually dumped the waste at distances far less than those contracted for, thereby resulting in a windfall equal to the difference between the contract price and the actual operating costs. *See id.*

The defendants in *Frank* argued that the municipalities had received exactly what they bargained for, i.e., sewage removal. The Second Circuit rejected that argument, finding it to be without merit because of the premium that the municipalities paid for the disposal of the waste at the federally-required distance. In other words, the court found that compliance with the regulations was an essential part of the bargain and, thus, the municipalities did not get what they paid for. Therefore, the court concluded that the evidence was sufficient to establish that the defendants possessed an intent to harm the municipalities. *See id.*

As was the case in *Paccione* and *Frank,* the Government alleges that PEOs in this case did not get what they bargained for. The Government asserts that, when the PEOs purchased the insurance policies, they believed that they were purchasing those policies from an insurance company that was licensed to sell them those policies, when in fact this was not the case and Defendant James Kernan knew that this was not true. Furthermore, the Government contends that, by not timely providing written policies to some PEOs and by providing some PEOs with policy forms purportedly providing for a $5,000 deductible while charging and collecting premiums applicable to a $250,000 deductible policy, Defendant James Kernan intended to harm Oriska's clients.

Having reviewed all of the cases that the parties cited and keeping in mind the legal principles expressed in Novak, the Court concludes that Defendant James Kernan's alleged misrepresentations are most similar to those at issue in *Paccione* and *Frank* and that, like the misrepresentations in those cases, Defendant James Kernan's alleged misrepresentations were

essential to the bargain.

The Court agrees with the Government that Defendant James Kernan's alleged representations to the PEOs that Oriska was authorized to issue workers compensation policies in some states, when in fact it was not, and that Oriska was authorized to issue high deductible policies in New York, when in fact it was not, are sufficient to withstand a motion to dismiss.[5]

### IV. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein as well as at oral argument, the Court hereby

**ORDERS** that Defendant James Kernan's motion to dismiss Counts 1 through 12 of the Superseding Indictment is **DENIED** in its entirety; and the Court further

**ORDERS** that the Government's cross-motion for discovery is **DENIED WITHOUT**

---

[5] The Court does not credit Defendant James Kernan's argument that, because New York Insurance Law provides that an insurer is not relieved of its obligations to an insured by virtue of selling either unlicensed plans or unauthroized insurance products, the PEOs got everything they bargained for. There is a fundamental difference between purchasing an insurance policy from a licensed agent and purchasing an insurance policy from an unlicensed agent, whom the purchaser may have to sue to get the benefits for which the purchaser bargained.

The Court also notes that many of Defendant James Kernan's arguments in support of his motion to dismiss in effect challenge the Government's ability to prove that Defendant James Kernan intended to harm the victim PEOs. Whether the Government can ultimately prove each of element of its mail and wire fraud claims against Defendant James Kernan, beyond a reasonable doubt, is not a proper subject for a Rule 12(b) motion to dismiss. *See* Fed. R. Crim. P. 12(b) ("A party may raise by pretrial motion any defense, objection, or request that the court **can determine without a trial** of the general issue." (emphasis added)).

**PREJUDICE** to renew if the parties cannot resolve the issues among themselves.

**IT IS SO ORDERED.**


Dated: March  11 , 2009
       Syracuse, New York

                                                        _____
                                                        Frederick J. Scullin, Jr.
                                                        Senior United States District Court Judge